## In re ZANICKI.
No. 2048.

District Court, D. Massachusetts.
April 15, 1946.

No appearance.

WYZANSKI, District Judge.

February 13, 1946, Carl F. Fernald, Master of the S. S. William Paca, one of the ships operated by the Calmar Steamship Corporation, filled out a declaration upon Coast Guard Form No. NAVCG 1517 on "account of wages and effects of deceased or deserting seaman." On that form it was stated that there was deposited a net amount of $88.55 on account of the wages of Antoni Zanicki who was alleged to be a deserting seaman.

Simultaneously Fernald turned over to James V. Cutrone, Deputy Shipping Commissioner, a brown envelope containing $88.55. The envelope stated that it covered the period from Dec. 17 to Jan. 24 [presumably Dec. 17, 1945, to Jan. 24, 1946]. It showed that the total wages payable to Zanicki were $316.39 and that deductions of $227.84 had been taken on account of advances, meals, taxes and the like, leaving a balance of $88.55.

The following day, February 14, 1946, Sophia S. Bernstein, another Deputy Shipping Commissioner, acting for P. L. Quinn, Shipping Commissioner "in accordance with §§ 4543, (46 U.S.C.A. § 626) and 4604 (46 U. S.C.A. § 706) of the Revised Statutes of the United States * * * turned over * * * the above wages * * * of deceased and deserting seamen," to James S. Allen, Clerk of the United States District Court. The Clerk now holds in the Registry of the Court this $88.55.

April 3, 1946, the seaman Zanicki in person requested the Clerk to hand the $88.55 over to him. At that time no other claim to the money had been presented either to the Shipping Commissioner or to the Clerk.

April 4 Calmar Steamship Corporation telegraphed its Boston attorney that Zaniecki [sic] had deserted the William Paca, that a hearing had been held by the Coast Guard [sic] without notice to Calmar Steamship Corporation and that Calmar Steamship Corporation had presented its claim to the Shipping Commissioner on behalf of the United States for expenses of an as yet undetermined amount incurred on account of Zanicki. On the same day the attorney turned this telegram over to the Clerk but no other formal action has been taken by or on behalf of the Calmar Steamship Corporation. Indeed, the Corporation has not presented any claim to the Shipping Commissioner.

These facts raise the question as to what is the appropriate procedure for the handling of funds paid over by a steamship company on account of the wages of a seaman who is alleged to have deserted.

Where a seaman is not merely alleged to have deserted but has in fact deserted, he forfeits his wages. 46 U.S.C.A. § 701, First. The master then has (a) a right to use the wages or any part thereof "in payment of the expenses occasioned by such desertion", and (b) a duty to turn over the balance, through the Shipping Commissioner, "to the judge of the district court * * * to be disposed of by him in the same manner as is prescribed for the disposal of the money, effects, and wages of deceased seamen." 46 U.S.C.A. § 706. Wages of deceased seamen are used (a) first for the satisfaction of claims which the court thinks fit to allow, 46 U.S.C.A. § 627, (b) then for the seaman's "widow" or children or those entitled under his will or by statutes governing distribution of intestate estates, 46 U. S.C.A. § 627, and (c) in default of other claimants, to augment a fund for destitute seamen, 46 U.S.C.A. § 628. Despite the language of 46 U.S.C.A. § 706, it would be anomalous to handle wages of deserting seamen exactly like wages of deceased seamen. Thus it would be extraordinary to give creditors of a living seaman who deserted a special right to reach in satisfaction of their claims the wages which the seaman had forfeited. It would be equally extraordinary to give the wages to the seaman's wife on the theory she was his "widow" and entitled to be treated as the heir of a living person, contrary to the maxim "nemo est haeres viventis." And there would be other strange results if the forfeited wages were to be subjected to the provisions of 46 U.S.C.A. § 627,—which was obviously designed to establish for the wages of de-

ceased seamen and of no others a summary federal probate proceeding as a substitute for a state probate proceeding. But although 46 U.S.C.A. § 627 cannot well be applied to the forfeited wages of a deserting seaman, 46 U.S.C.A. § 628 can readily be applied. This application produces the result that the balance of the wages of a seaman who admittedly deserted goes, appropriately enough, not by way of windfall to a shipping company, or a creditor, or a seaman's relative, but (as a sort of escheat) to a fund for destitute seamen.

But it may happen, as it has in the case at bar, that the seaman whose wages have been forfeited will deny that he in fact deserted.

If the seaman contends that he did not desert, he can, of course, bring a suit in admiralty against his employer for his wages. 46 U.S.C.A. § 603. But he is not limited to such a suit. He can raise the question of the forfeiture of his wages in "any proceeding lawfully instituted with respect to such wages." 46 U.S.C.A. § 705. Thus he can raise it not merely by asserting a claim against the vessel, but also by asserting an in rem claim to the "balance" which the master has set aside as representing wages attributable to the seaman's service, and which the master has paid over by way of the Shipping Commissioner, to the Registry of Court. That balance in the Registry constitutes a trust for the benefit of the seaman if he did not desert, and for the benefit of the fund for destitute seamen if he did desert.

A seaman who desires to assert his claim to that trust should file with the Clerk a verified petition setting forth the grounds of his claim and the facts surrounding the cessation of his employment, and concluding with a prayer that the Court issue an order directed to the master (as the party creating the trust) and to the Attorney General (as the representative of the Destitute Seamen's Fund which might be an adverse claimant) asking them to show cause why the balance should not be paid, over to him. If upon examining the petition the Court finds it in good order, it in appropriate cases will issue an order to show cause returnable

as of a future date, and will direct that the order be served upon the master and the Attorney General. Upon the return day the Court will consider the verified petition and testimony offered ore tenus and also in appropriate cases affidavits.