In the Matter of Michael S. **BEDZIK**, Alleged Deserting Seaman.

Seaman's Wages Docket No. 12, Case No. 36.

United States District Court
D. Maryland.
April 11, 1957.

Sol C. Berenholtz and Solomon Kaplan, Baltimore, Md., for petitioner.

Leavenworth Colby, Chief, and George Jaffin, Atty., Admiralty and Shipping Section, Dept. of Justice, Washington, D. C., and Walter E. Black, Jr., U. S. Atty., and William J. Evans, Asst. U. S. Atty., Baltimore Md., for U. S. of America.

THOMSEN, Chief Judge.

This case presents the questions what is the proper procedure, and who are the necessary and proper parties, in proceedings dealing with the disposition of the wages and effects of an alleged deserting seaman. Because of the relatively small amount involved, $39.42 and certain personal effects, which insured that no one would be badly hurt by delay, the Admiralty and Shipping Section of the Department of Justice and able and experienced counsel for seamen in Baltimore have treated this as a test case, filing elaborate briefs and delivering spirited oral arguments.

On August 3, 1956, at Baltimore, the master of the S.S. Columbia Heights made the following entry in the ship's log: "Michael Bedzik * * * wiper failed to be aboard to turn to at 0800 on his regular duty. He is charged with being absent without leave and is hereby fined two days pay * * * This entry will be read to this man on his return to the vessel." On August 5, 1956, at Baltimore, the master made the following entry: "Michael Bedzik wiper * * * has not reported aboard the vessel at time of sailing. He has been absent since 8/2/56. He is charged with desertion and his wages and effects are forfeit. His wages will be computed thru 8/2/56, his effects tallied and sealed and all turned over to Commissioner at final port of discharge."

The S.S. Columbia Heights terminated its voyage at the Port of Baltimore on August 31, 1956. The master delivered to the Shipping Commissioner for the Port of Baltimore, Bedzik's earned wages, in the net amount of $39.42, and a carton containing certain personal effects, scheduled on Form NAVCG 1517, "Account of Wages and Effects of Deceased or Deserting Seamen". In accordance with R.S. § 4604, 46 U.S.C.A. § 706, the shipping commissioner turned over the wages and effects to the clerk of this court, who receipted for them, although the personal effects were in fact physically retained by the shipping commissioner, as is customary. The clerk deposited the $39.42 in the registry of the court.

Thereafter, Bedzik filed a petition alleging that on August 2, 1956, he had been granted shore leave and had gone to Pittsburgh, Pennsylvania, intending to return to the vessel prior to the time it sailed; that he became intoxicated and was unable to leave Pittsburgh until August 4, 1956; and that when he arrived in Baltimore, he found the vessel had sailed. He denied that he had deserted, and prayed for an order requiring the clerk to pay to his proctors of record the earned wages deposited in this court, and directing the shipping commissioner to deliver to him his clothing and personal effects.

Thereupon, in accordance with standing instructions of Judge Coleman, when he was chief judge of this court, the

clerk wrote to the Attorney General of the United States, with copy to the local United States Attorney, and to Isbrandtsen Company, Inc., the shipowner, notifying them of the contents of the petition, and stating: "Before acting upon this petition, the Court desires more information than the petitioner's own ex parte statements and what is disclosed by the Master's statement of account received by the Court from the Shipping Commissioner, in regard to petitioner's exact status at the time in question." The clerk requested the Attorney General to advise him within thirty days "whether you have any cause to show why said sum should not be paid to the petitioner", and requested the shipowner to advise him within thirty days "whether the charge of desertion against this seaman was merely a classification by the Master, or whether there is reliable evidence to support this charge, and if you have such evidence please furnish same under affidavit".

The United States Attorney filed (1) an answer to the petition, alleging that Bedzik deserted the S.S. Columbia Heights and, therefore, has no right to the funds and other property deposited with the clerk, and praying that the petition be dismissed; and (2) a claim of the United States, alleging that pursuant to 46 U.S.C.A. § 701 the wages and personal belongings of Bedzik are subject to forfeiture because of his desertion, and that pursuant to 46 U.S.C.A. §§ 706 and 628 the said sum and proceeds from said personal belongings so forfeited are to be paid into the treasury of the United States. Simultaneously therewith, the United States Attorney propounded twenty-nine interrogatories to be answered by the petitioner under oath.

The shipowner wrote a letter to this court, not supported by affidavit, but accompanied by photostatic copies of the official log book entries and of the pay voucher showing total wages due of $49.59, total deductions of $10.17, and a balance due of $39.42. The letter also stated: "Insofar as we can determine the charge of desertion against this seaman was made by the Master in the belief that the seaman had left the vessel without the intention of returning."

Petitioner has now moved that the claim of the United States be dismissed and that the answer and interrogatories filed by the United States be stricken, for the reasons: (1) that the United States has failed to state a claim upon which relief can be granted, (2) that the United States is not a proper party to oppose the petition filed by an alleged deserting seaman, (3) that to require petitioner to answer the interrogatories would impose a hardship upon him inconsistent with his status as a ward of the court, and (4) that the procedure which the United States seeks to establish is not in accord with the applicable statutes, but (5) is expensive and unnecessary to carry out the statutory provisions.

■ When a seaman has in fact deserted, 46 U.S.C.A. § 701 provides that he shall be punished by the forfeiture of all or any part of his wages, clothing and effects. The master then has a right to use the wages or any part thereof "in payment of the expenses occasioned by such desertion", and a duty to turn over the balance, through the shipping commissioner, "to the judge of the district court * * * to be disposed of by him in the same manner as is prescribed for the disposal of the money, effects, and wages of deceased seamen." 46 U.S.C.A. § 706. Wages of deceased seamen go first for the satisfaction of claims, then to the seaman's widow or children or those entitled under his will or by statutes governing distribution of intestate estates, 46 U.S.C.A. § 627, and in default of such claimants, to a fund for destitute seamen, 46 U.S.C.A. § 628. I agree with Judge Wyzanski, who said In re Zanicki, D.C., 65 F.Supp. 447, 448: "Despite the language of 46 U.S.C.A. § 706, it would be anomalous to handle wages of deserting seamen exactly like wages of deceased seamen. Thus it would be extraordinary to give creditors of a living seaman who deserted a special right to

reach in satisfaction of their claims the wages which the seaman had forfeited. It would be equally extraordinary to give the wages to the seaman's wife on the theory she was his 'widow' and entitled to be treated as the heir of a living person, contrary to the maxim 'nemo est haeres viventis.' And there would be other strange results if the forfeited wages were to be subjected to the provisions of 46 U.S.C.A. § 627,—which was obviously designed to establish for the wages of deceased seamen and of no others a summary federal probate proceeding as a substitute for a state probate proceeding. But although 46 U.S. C.A. § 627 cannot well be applied to the forfeited wages of a deserting seaman, 46 U.S.C.A. § 628 can readily be applied. This application produces the result that the balance of the wages of a seaman who admittedly deserted goes, appropriately enough, not by way of windfall to a shipping company, or a creditor, or a seaman's relative, but (as a sort of escheat) to a fund for destitute seamen."

■ Although sec. 706 provides that the money be turned over "to the judge of the district court", it is clear that it should be paid into the registry, and that is the practice.

■ If the seaman contends that he did not desert, he can sue his employer for his wages, 46 U.S.C.A. § 603, or he can raise the question of the forfeiture of his wages in "any proceeding lawfully instituted with respect to such wages." 46 U.S.C.A. § 705. That provision permits him to assert an in rem claim to the "balance" which the master has set aside as representing wages attributable to the seaman's service, and which the master has paid over by way of the shipping commissioner, to the registry of the court. In re Zanicki, supra, 65 F.Supp. at page 449.

■ The United States is clearly interested in such a proceeding, (1) as *parens patriae,* because the money will eventually go to the treasury for the relief of destitute seamen if it is not awarded to the alleged deserting seaman,

46 U.S.C.A. § 628, (2) because of the interest of the United States in preventing desertion, and (3) because of the general duty of the United States to enforce forfeitures. Cf. 46 U.S.C.A. § 711.

This is true despite the fact that in recent years the Coast Guard, by virtue of its control over the documents and licenses of merchant seamen, has assumed responsibility for the maintenance of discipline on American vessels, and is empowered to suspend or revoke a seaman's papers, after proper hearing, where it is found that the seaman has been guilty of misconduct. See 46 U.S. C.A. § 239(d) ; 46 C.F.R. secs. 137.01 to 137.21–5.

Whether the instant proceeding is technically an in rem proceeding in admiralty, Humes v. Alaska Transp. Co., 9 Cir., 180 F.2d 534, or is similar to an in rem proceeding in admiralty, the court should give the United States such notice of the petition as is required by Admiralty Rule 42, 28 U.S.C., and a reasonable opportunity to investigate and answer the petition.

■■ The procedure for the disposal of the money, effects and wages of deceased seamen, which 46 U.S.C.A. § 706 says shall be followed in the case of alleged deserting seamen, is an informal, summary procedure, designed to avoid unnecessary expense and delay. These considerations should be kept in mind in adapting the procedure to cases involving alleged deserting seamen. The court may dispose of the case on the verified petition and any exhibits or affidavits filed by the respective parties in interest, or, in its discretion, may set the case for a more elaborate hearing. The court may in a proper case require a prompt answer by the government to the petition of the seaman, especially where the claim is for the return of his clothing or personal effects, or where unusual hardship would result from any delay. The average seaman can afford to be ashore only for a brief period of time, and when he is ashore in Baltimore it is desirable that he receive a prompt and inexpensive determination of his rights.

But the court would not be justified in ignoring the interest of the United States; it should be given notice of the proceedings and an opportunity to be heard.

The decision of the Fourth Circuit In re Williams, 139 F.2d 262, does not require a different conclusion. The interest of the United States was not presented to the court nor discussed in the per curiam opinion, which dealt with the sufficiency of the evidence to prove desertion.

 On the other hand, the shipowner is not a necessary party, unless the petition raises the issue that the amount of wages surrendered was less than those due him on the day of the alleged desertion. 46 U.S.C.A. § 705; Humes v. Alaska Transp. Co., supra. The shipowner should be notified in the ordinary case, and may intervene; however, it ordinarily has no interest in the fund, and the court is not required to delay disposition of the funds so that the shipowner may be heard.

 It is not necessary to decide in this case whether the United States may proceed at any time to enforce a forfeiture of the money, upon due notice to the alleged deserting seaman, or whether it must allow the seaman five or six years in which to claim the money before it is paid into the treasury. Cf. 46 U.S.C.A. §§ 628, 711; 28 U.S.C.A. § 2042. The United States may, in its answer to the seaman's claim or in a separate paper filed therewith, allege that the seaman deserted and claim a forfeiture and the right to receive the money for the benefit of the fund. The claim filed by the United States in this case is sufficient.

 The government contends that it has the right to serve interrogatories in this case under Admiralty Rule 31. But in view of the nature of the proceedings, 48 U.S.C.A. §§ 706, 627, 628, discussed above, the right to serve interrogatories is subject to the discretion of the court. Even where the right to serve interrogatories is provided by rule, the court will sustain exceptions to

them to protect a party from unnecessary annoyance, expense, embarrassment or oppression. Most of the interrogatories propounded by the government in this case are either trifling or argumentative. I sustain petitioner's exceptions to all of them except Nos. 4, 7, 15, 19, 25, 27, and 29.

Petitioner's motions are otherwise denied.